UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL R. NELSON,

        Petitioner,

  v.                                    Case No. 02-C-1047

JUDY P. SMITH,

        Respondent.

**DECISION AND ORDER**

Proceeding under 28 U.S.C. § 2254, petitioner Michael Nelson seeks relief from his state conviction. Nelson pled no contest to third-degree sexual assault, and in his present petition he asserts that his plea was the result of ineffective assistance of his trial counsel. For the reasons given herein, the petition is denied.

Under 28 U.S.C. § 2254(d), a petitioner may be granted habeas relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the first clause, habeas relief is proper if the state court "arrive[d] at a conclusion opposite to that reached by [the] Court on a question of law" or "if the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" and reached a different result. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). And, under the second clause of § 2254(d), a state court's decision will constitute an "unreasonable application" of

Supreme Court precedent only if the decision is "objectively unreasonable." *Id.* at 409. This means that a decision must not only be "incorrect," but must also be "unreasonable": "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

**1. Nelson's Claims**

Nelson's central claim–and, as discussed below, his only claim–is that trial counsel's failure to properly investigate his case and prepare for trial forced Nelson to make an involuntary eleventh-hour plea deal. Counsel's shortcomings, in Nelson's view, meant that the plea to which Nelson agreed was based not upon a considered defense strategy so much as on counsel's ineffectiveness. He now argues, in essence, that he was the victim of a conspiracy of people who wanted to get him convicted, and also that he was on vacation in Jamaica during one of the alleged crimes. If his trial counsel had fully investigated these issues, the argument goes, he would have taken the case to trial and possibly obtained an acquittal. The second argument Nelson raises implicates counsel's performance in a more general sense, that is, without respect to the plea agreement. He also makes an argument that his plea was involuntary.

Before proceeding further, some procedural history is appropriate because, in my view, both parties have been overly technical in their description of the "claims" Nelson advances. Nelson entered a plea of guilty and in his plea colloquy asserted that he was doing so voluntarily. He stated that he discussed the issues with his attorney, had no questions, and understood everything he was doing. But prior to sentencing, he wrote a memo to the trial court in which he asserted his plea was not voluntary. The memo was not discussed at Nelson's sentencing, and Nelson never mentioned

2

it nor moved to withdraw the plea until after his sentencing. His post-sentencing motion to withdraw his plea was denied, and Nelson appealed.

The court of appeals applied the "manifest injustice" standard to Nelson's post-sentencing motion to withdraw the plea, meaning that a plea may only be withdrawn after sentencing if the withdrawal would be necessary to correct a manifest injustice. One way an appellant can show the requisite manifest injustice (which would allow him to withdraw his plea) is to demonstrate ineffective assistance of counsel. *See State v. Bentley,* 548 N.W.2d 50 (Wis. 1996). Thus, Nelson's claim that trial counsel was ineffective was advanced largely in the context of demonstrating the manifest injustice required by the court of appeals to allow a withdrawal of a plea after sentencing. As such, the claim of ineffective assistance was substantially intertwined with Nelson's claim that his plea was involuntary, a claim he also makes in this habeas petition.

While Nelson raises three distinct arguments in his briefs, it is clear that all three issues are fundamentally related. Indeed, his claims that counsel was ineffective at the pleading stage largely makes sense only to the extent counsel's ineffectiveness undermined the voluntariness of his plea. That is, because Nelson did not proceed to trial, his various and generic complaints about counsel's performance have no resonance outside of the plea context. Thus, to the extent he brings separate claims for ineffective assistance, I will treat them as one. His final argument–that his plea was involuntary–must also be amalgamated because a collateral attack on the voluntariness of a plea is only feasible through the lens of ineffective assistance. *See Hill,* 474 U.S. at 56-57("As we explained in *Tollett v. Henderson,* 411 U.S. 258 (1973), a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*

3

*[v. Richardson,* 397 U.S. 759, 771 (1970)]." In sum, although the parties address Nelson's arguments as if they were separate claims, it is clear that all of Nelson's efforts are directed at showing that his trial counsel's ineffective preparation for trial caused him to enter an involuntary plea.

**2. Exhaustion**

Having defined the scope of Nelson's claim, I will address the state's contention that the essence of this claim was never presented to the state courts and that Nelson has therefore procedurally defaulted it. An application for writ of habeas corpus from a person in state custody shall not be granted unless it appears that (a) the applicant has exhausted state remedies, or (b) there is no available state corrective process or circumstances exist that render such process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must provide the state courts with a full and fair opportunity to review his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). But it is not enough to merely flag a potential issue and couch it in constitutional terms; exhaustion occurs when the petitioner not only cites the federal legal principles but also the operative facts of the claim. It is only then that the state courts have been given a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry,* 264 F.3d 732, 737-38 (7th Cir. 2001).

Nelson concedes that his presentation of the issue to the state courts was "disjointed," but protests that the gist of the issue was in fact adequately presented to the state courts. Because the questions raised by an ineffective assistance claim are fact-intensive, determining whether the petitioner exhausted his claims is not a straightforward undertaking. That is, it is not simply a matter of citing *Strickland v. Washington* (as the petitioner did) and then relying on the state courts

to sort out any potential issues. Instead, because the facts in any ineffective assistance claim are unique to the case at hand, the petitioner must advance reasons showing *why* the facts he alleged rendered counsel's performance deficient with respect to the plea he entered.

That the operative facts are necessary is made clear by examining the nature of an ineffective assistance claim in the context of a plea. The Supreme Court has given an example of an ineffective assistance claim made after a defendant has pled guilty:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill v. Lockhart,* 474 U.S. 52, 59-60 (1985). The appellant in this situation thus must give the reviewing courts information about the "likelihood that the discovery of the evidence would have led counsel to change his recommendation;" that is, he must explain why the evidence left undiscovered due to counsel's negligence would have changed the advice counsel gave. *Id.* Without that information being presented, a reviewing court has no basis on which to grant relief and has not been given a meaningful opportunity to rule on the claim. *Howard v. O'Sullivan,* 185 F.3d 721, 725 (7th Cir.1999).

With that as background, I will now turn to the arguments Nelson did present to the state court of appeals. In his appellate brief, Nelson cited three reasons his counsel was not prepared for trial. First, his lawyer failed to subpoena any witnesses. Second, counsel relied on reports from private investigators rather than personally speaking to every one of the witnesses. Third, counsel failed to speak to Nelson's son (despite attempts to reach him). This latter failing was "surprising,"

5

Nelson argued, given that the son had introduced the victims to Nelson. (Answer., Ex. C at 14.) The entirety of these arguments consist of less than one page in a lengthy brief; they contain no elaboration nor any indication as to why counsel's purported failings constituted ineffective assistance.

That the arguments were not adequately presented is evident from the court of appeals' opinion. The court was obviously at a loss as to how to address his claims, noting that, in the matter of the failure to obtain subpoenas, "Nelson has not explained what these witnesses would have testified to" nor had he shown why a "subpoena was necessary to obtain their appearance at trial." (Answ., Ex. F at 5.) With respect to the claim that counsel did not personally speak to some of the witnesses, the court of appeals noted that "Nelson has not explained why this is deficient performance, nor what these witnesses would have said." (*Id.*) (Presumably "these witnesses" included Nelson's son, whom his attorney was unable to reach.)

Thus, while Nelson did "present" the issue of ineffective assistance to the state courts in the meager sense that he flagged the possibility of a constitutional violation, nowhere did Nelson explain the operative facts to show the state courts *how* his rights were actually violated. In particular, he never argued that his attorney's ineffectiveness resulted in an involuntary plea, which is the crux of the argument he now makes. In the Supreme Court's phraseology, Nelson had to explain why counsel's failure to interview witnesses, for example, increased the "likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill,* 474 U.S. at 59-60. That is, when the claim of ineffectiveness is that counsel did not investigate an issue, the petitioner must show what benefit would have been obtained had counsel performed adequately. Thus, the operative facts are especially important in an ineffective assistance context

6

because such claims do not exist in a vacuum; instead, the deficiency or adequacy of counsel's performance must be assessed in light of the operative facts of the case before him. In addition, the prejudice prong of an ineffective assistance claim requires counterfactual predictions about what would have happened absent the alleged deficiencies. Both of these inquiries are highly fact-specific and require more development than the simple flagging of an issue in an appellate brief. Because Nelson failed to articulate any operative facts in the state court, I find that he has not adequately presented this issue and that his claims are procedurally defaulted.

In fact, Nelson comes close to conceding as much, suggesting that even if his direct appeal did not adequately present the ineffective assistance argument his state habeas petition *did*. (Reply Br. at 10-11.) It is true that his state habeas petition–like his present federal petition–did present a great deal more detail about, for example, why certain witnesses were important or why counsel's failures might have constituted ineffective assistance. (Answer, Ex. I.) But, as the court of appeals noted in reviewing his collateral petition, the claims of ineffective assistance of trial counsel were not properly before that court because they had already been raised in Nelson's direct appeal. (Answer, Ex. J at 6-7.) Improperly raised arguments in later-filed motions for post-conviction relief do not allow state courts a meaningful opportunity to rule on his claims in the first instance; an alternative outcome would allow petitioners to remedy exhaustion problems simply by filing frivolous and untimely post-conviction motions in state courts. Accordingly, the arguments made in Nelson's state collateral proceedings are not relevant to the exhaustion analysis in this case.

The requirement that these issues be fully presented to the state courts is not some mere technicality; instead, it is a necessary component of the habeas framework as enshrined in § 2254. *See O'Sullivan*, 526 U.S. at 845. The state courts are to get the first chance to pass on the arguments

7

the petitioner raises and, in this particular context, to determine whether counsel's performance was deficient within the framework of *Strickland*. Once the state courts make their determination, the federal court must, pursuant to § 2254(d), consider whether that determination is either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. When the state courts have not been given reason to understand the issues raised by the defendant–especially when the legal issues are tied to the factual context of the defendant's case–the state courts cannot be expected to *sua sponte* divine the nature of the defendant's contentions or to meaningfully apply *Strickland*. Thus, fair presentment of the issue is required for both state and federal courts to do their jobs. Because the petitioner did not exhaust his claim, and because the state courts would now consider it procedurally defaulted, it may not be considered in this federal habeas tribunal. Because the petitioner makes no explanation for the failure to exhaust or for any prejudice he sustained, his claim must be dismissed. *Bintz v. Bertrand,* 403 F.3d 859, 864 (7th Cir. 2005).

**3. The Exhausted Arguments**

To the limited extent Nelson *did* present his claims to the state courts, however, the state courts did not unreasonably apply or contravene any controlling Supreme Court precedent. *See* 28 U.S.C. 2254(d)(1). The court of appeals first dealt with Nelson's claim that his attorney did not subpoena any witnesses. The court found that it appeared that the witnesses "were cooperating and there is no indication that a subpoena was necessary to obtain their appearance." (Answer, Ex. F at 5.) Because Nelson never explained to the court of appeals why subpoenas would be important, the court noted that "Nelson has not established why this constitutes deficient performance." (*Id.*) With no explanation of Nelson's claim, the court did not unreasonably apply any relevant Supreme

8

Court precedent in finding no ineffective assistance. The failure to subpoena witnesses, on its own, does not call into question counsel's performance at all.[1]

Nelson's second exhausted claim, such as it was, contended that counsel was ineffective for failing to talk to Nelson's son. This, Nelson claimed, was "surprising" given that "the alleged victims were introduced to Nelson via his son." The court of appeals did not address this claim specifically, but found that Nelson had not explained why counsel's failure to personally speak to some witnesses was deficient performance, nor had Nelson explained how he was prejudiced thereby. Again, the frailty of the claim as presented makes its adjudication difficult, but it is clear the state court of appeals did not misapply any controlling Supreme Court precedent. Counsel's failure to talk to a witness who had introduced the victims to the defendant–the claim that was presented to the court– is not somehow a *per se* violation of the attorney's duty of representation. Without hearing the details of Nelson's claim, the court was in no position to rule meaningfully on it, and I cannot find any grounds for habeas relief on this claim.

The final claim Nelson presented to the state courts involved counsel's failure to personally interview all of the witnesses, instead relying in some cases on investigators. Once again, this claim, by itself, does not call into question counsel's performance. There is no reason to believe that counsel in every case must personally speak with anyone involved; this is especially so when counsel, as here, followed in the footsteps of other appointed counsel who had already done some

---

[1] Nelson now contends that his son would have required a subpoena because he was the source of the allegations against him and was part of the conspiracy that got him convicted. This argument was not exhausted; instead, all the court of appeals had to go on was Nelson's bare statement that the son had introduced the victims to Nelson and that it was therefore "surprising" that Nelson's attorney had not talked to the son. The argument made no mention of why a subpoena would have been required.

9

of the legwork in preparation for trial. Reliance on investigator's reports does not, by itself, constitute ineffective assistance, and the court of appeals correctly ruled against Nelson on this claim as well.

In sum, because Nelson never gave the state courts a full opportunity to meaningfully review the claims he now brings, the claims are procedurally defaulted. To the extent the state courts did have such an opportunity, the claims raised failed to state grounds for constitutional violations. Accordingly, the petition is DISMISSED.

SO ORDERED this ___17th___ day of January, 2006.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge